# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **SKY D. STOODT,** | CASE NO. 3:25 CV 201 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Plaintiff Sky D. Stoodt seeks judicial review of an adverse Social Security benefits decision under 42 U.S.C. § 405(g). This case was referred to Magistrate Judge Jonathan D. Greenberg for a Report and Recommendation ("R&R") under Local Civil Rule 72.2(b)(1). Judge Greenberg recommends this Court affirm the Commissioner's final decision. (Doc. 10). Plaintiff filed objections to the R&R (Doc. 11), and the Commissioner filed a response thereto (Doc. 12). For the reasons set forth below, the Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff filed for supplemental security income and disability insurance benefits in April 2018, alleging a disability onset date of June 30, 2017. *See* Tr. 218-21. Following the administrative process and two previous district court appeals and remands, an administrative law judge ("ALJ") issued a written decision on October 18, 2024, finding Plaintiff not disabled. (Tr. 1352-66); *see* Doc. 10, at 2 (summarizing prior procedural background). This appeal ultimately followed. (Doc. 1).

Plaintiff raised a single argument regarding the ALJ's decision: the ALJ failed to properly evaluate Certified Nurse Practitioner Ashley Conrad's treating source opinion according to the relevant regulation. (Doc. 6, at 8-12).

In his R&R, Judge Greenberg concluded the ALJ did not err and recommends the Court affirm the Commissioner's decision. *See* Doc. 10.

### STANDARD OF REVIEW

Under the relevant statute:

> Within fourteen days after being served with a copy [of a Magistrate Judge's R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(2)-(3).

In Social Security cases, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (citation modified). If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## DISCUSSION[1]

Plaintiff objects to the R&R. He first contends the Magistrate Judge misconstrued his argument. Plaintiff asserts "the Magistrate Judge copied and pasted several paragraphs of the ALJ's decision – highlighting certain statements in bold. This was supposedly the Magistrate Judge's attempt to demonstrate that the ALJ considered evidence relating to both the supportability and consistency factors." (Doc. 11, at 2) (citation omitted). Specifically, Plaintiff contends his "issue was not that the ALJ failed to address the [consistency and supportability] factors, but instead, that the ALJ's reasoning for finding Mr. Conrad's opinions unsupported and inconsistent [was] not supported by substantial evidence." *Id.* Therefore, he contends, "the mere presence of evidence that supposedly related to those factors was mentioned sporadically throughout the ALJ's decision does not mean that the ALJ's evaluation of Ms. Conrad's opinions complied with 20 C.F.R. § 404.1520c. *Id.* at 2-3. Upon *de novo* review of Plaintiff's arguments in both his objections and original briefing, the Court finds the ALJ did not err.

The cited regulation requires the ALJ to evaluate each medical opinion and articulate how persuasive he finds it to be. 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record."). The regulations state that the ALJ will "consider" five factors in making this determination: supportability, consistency, relationship with claimant, specialization, and "other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c). The ALJ, however, must only "explain how [she] considered the supportability and consistency factors," but need not specifically articulate consideration of the other factors. *Id.* § 404.1520c(b)(2). As to

---

1. Neither party objects Judge Greenberg's summary of the medical record. Because the Court incorporates the R&R into this Opinion, it need not repeat Plaintiff's medical history, which was thoroughly described by Judge Greenberg.

"supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). As to "consistency," "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). And, as previously established, an ALJ's determinations must be supported by substantial evidence.

Conrad completed two Mental Medical Source Statements regarding Plaintiff's functioning. *See* Tr. 1025-27, 1747-49.[2] In the first, authored in June 2020, Conrad opined Plaintiff had "extreme" impairment of ability in all areas of social interaction:

- accepting instruction from or responding appropriately to criticism from supervisors;

- working in coordination with or proximity to others without distracting them or exhibiting behavioral extremes;

- responding appropriately to co-workers or peers; and

- relating to the general public and maintaining socially appropriate behavior.

(Tr. 1025). Conrad indicated her answers to these questions would change if only minimal contact or interaction with others were required. *See id.* By way of explanation, she wrote: "Patient's anxiety severely limits his ability to leave his home, and makes it very hard to interact with others.

---

2. These statements included the following definitions:
   None = No limitations.
   Mild = Unable to function in this area less than 10% of the work day or work week.
   Moderate = Unable to function in this area from 11% to 25% of the work day or work week.
   Marked = Unable to function in this area from 26% to 50% of the work day or work week.
   Extreme = Unable to function in this area over 50% of the work day or work week.
(Tr. 1025, 1047).

If he was able to find a job with no contact with others, he would do better. Although, his severe anxiety makes it near impossible to interview for a job." *Id.* As to sustained concentration and persistence, Conrad opined Plaintiff had "extreme" impairment of ability to:

- work in cooperation with or in proximity to others without being distracted by them;
- maintain attention and concentration for more than brief periods of time; and
- perform at production levels expected by most employers.

(Tr. 1026). She further opined Plaintiff had marked impairment of ability to process subjective information accurately, use appropriate judgment, carry through instructions and complete tasks independently. *Id.* As to adaptation, Conrad opined Plaintiff had an extreme limitation of ability to:

- respond appropriately to changes in the work setting;
- behave predictably, reliably and in an emotionally stable manner; and
- tolerate customary work pressures. *Id.*

*Id.* She opined Plaintiff had moderate limitation in the ability to remember locations, procedures, and instructions; be aware of normal hazards and take necessary precautions; and to maintain personal appearance and hygiene. *Id.* She further checked boxes indicating Plaintiff (1) was likely to have unscheduled absences five or more days per month due to his conditions and/or side effects of medication and (2) his condition was likely to deteriorate if placed under the stress of a normal work week. (Tr. 1027). By way of explanation, Conrad stated: "When patient leaves his home and is around other people, it causes panic attacks. For his appointments at the office, he needs to be roomed immediately to avoid being in the lobby around other people because he experienced a severe panic attack the first couple of visits." *Id.*

Conrad authored a second opinion in September 2024. (Tr. 1747-49). As to social interaction, she opined Plaintiff had "marked" limitation in each area, and "extreme" limitation in the ability to accept instruction from or respond appropriately to criticism from supervisors. (Tr. 1747). She explained: "Patient has not worked in many years due to his severe anxiety and fear of being around people / being in public." *Id.* As to abilities related to sustained concentration and persistence, Conrad opined Plaintiff had "marked" limitations in all identified categories except the ability to work in cooperation with or in proximity to others without being distracted by them, which she opined was extreme. (Tr. 1748). As to adaptation, Conrad opined Plaintiff had "extreme" impairment of his abilities to:

- behave predictably, reliably, and in an emotionally stable manner;
- maintain personal appearance and hygiene;
- tolerate customary work pressures.

*Id.*. She opined he had "marked" limitation in the ability to:

- respond appropriately to changes in work setting.
- remember locations, workday procedures, and instructions;
- be aware of normal hazards and take necessary precautions.

*Id.* She again opined Plaintiff was likely to miss more than five days of work per month, and his condition was likely to deteriorate if placed under the stress of a normal work week. (Tr. 1749). She explained: "Patient has not been able to cope effectively with even slight change. He is not well in social settings, has significant agoraphobia." *Id.*

> In addressing Conrad's opinions, the ALJ stated:
>
> Ashley Conrad, CNP, submitted several statements regarding the claimant's work related capabilities (Ex. 13F; 14F; 20F; 23F). Some of her statements were on issues reserved to the Commissioner (Ex. 13F). The undersigned will not provide an analysis of statements on issues reserved to the Commissioner, as this evidence is

6

neither valuable nor persuasive (20 CFR 404.1520b and 416.920b). Ms. Conrad opined that the claimant had "extreme" limitations in all areas of work-related social interactions but indicated that he would "do better" if able to "find a job with no contact with others" (Ex. 14F/1). However, the claimant had reduced limitations in April 2024 to only marked impairment except in the way of responding appropriately to criticism, indicating he had been improving on his medications (23F). She opined "extreme" limitations in working in cooperation or proximity to others without distraction, maintain attention and concentrate for more than brief periods, perform at production levels, respond to changes in work setting, behave predictably, and tolerate customary work pressures. She opined "marked" limitations in using appropriate judgment and carry out instructions and complete tasks; and "moderate" limitations in all other areas of mental work-related functioning (Ex. 14F; 20F). In April 2024, his limitations were noted less severe and only marked in maintaining attention and concentration and performing at production levels and responding to changes in a work setting, again indicating that he was improving on his medications (23F). These opinions are generally inconsistent with and unsupported by the record as a whole, including the objective examinations of Ms. Conrad, which generally demonstrated that while the claimant experienced mood fluctuations, he was noted to be relatively stable with medication, as discussed in detail above. Memory testing showed no deficits, and while he did note difficulty with group social situations, examinations showed cooperative behavior and full orientation. The opinions of Ms. Conrad are found less persuasive, although her narrative statement regarding the claimant's work-related social interactions ("he would "do better" if able to "find a job with no contact with others") has been incorporated into the residual functional capacity above.

(Tr. 1362-63).

The ALJ ultimately concluded Plaintiff retained the residual functional capacity to:

perform a full range of work at all exertional levels but with the following nonexertional limitations: He can perform simple routine tasks but not at a production rate pace for example no assembly line or conveyor belt work. And can respond occasionally to superficial interaction with supervisors, co-workers, and the general public. Superficial is defined as being able to be in proximity to others, exchange greetings with others, and engage in discussions that do not require the individual to resolve conflict among others or to perform team or tandem work with co-workers. He can tolerate few changes in the work environment, defined as routine job duties that remain statis and are performed in a stable predictable work setting; any changes need to occur infrequently and be adequately and easily explained.

(Tr. 1357). Upon review, the Court agrees with the R&R's conclusion that the ALJ did not err in her evaluation of Conrad's opinion. To address Plaintiff's objection that the R&R did not sufficiently explain the basis for that conclusion, the Court does so here.

As to supportability, the ALJ stated Conrad's opinions were not consistent with or supported by her own treatment records.[3] Plaintiff, however, contends the ALJ's rationale for so finding, as well as the ALJ's overall reliance on Plaintiff's "improvement" or being "stable," "does not contradict Ms. Conrad's opinions." (Doc. 11, at 3); *see also* Doc. 6, at 10 ("[J]ust because the ALJ said that Ms. Conrad's opinion was inconsistent with and unsupported by the record, does not mean that Ms. Conrad's opinion was truly inconsistent with the record."). Plaintiff contends his condition was one that fluctuated, and the instances of stability or improvement were temporary.

When the ALJ's opinion is read as a whole, as the Court must, it finds the ALJ's supportability determination supported by substantial evidence. *See Buckhannon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (noting the court "read[s] the ALJ's decision as a whole and with common sense"). The ALJ provided a thorough analysis of the medical records – including those from Conrad – prior to her evaluation of Conrad's (and others') medical opinions. *See* Tr. 1359-61. That summary included both positive and negative evidence and the Court can consider this earlier summary and analysis in considering the ALJ's evaluation of Conrad's opinion. *Lavenia v. Comm'r of Soc. Sec.*, 2022 WL 2114661, at *2 (N.D. Ohio) (finding acceptable

---

3. Although the ALJ used the word "consistent," again, the supportability factor is described by the regulations as: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1) (emphasis added). The ALJ's opinion is reasonably read to say Conrad's opinions were not supported by her own records. *See Guthrie v. Comm'r of Soc. Sec.*, 2024 WL 1466867, at *2 (N.D. Ohio) ("Courts have frequently held the ALJ is not required to use the word 'supportability' or 'consistency' in order to properly make findings as to those factors.").

the ALJ's evaluation of a medical opinion by summarizing and referencing earlier discussion of the pertinent medical records); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 455 (6th Cir. 2016) (finding "reversal was not warranted because the ALJ's conclusion was sufficiently supported by factual findings elsewhere in the decision that need not be repeated"). In summarizing these medical records, the ALJ specifically cited most of Conrad's own treatment notes. *See* Tr. 1360-61 (citing, *inter alia*, Tr. 1073-74, 1087, 1099, 1108, 1124, 1157, 1159, 1238, 1246, 1269, 1317, 1627, 1712).

The ALJ's review of Conrad's treatment notes, and the treatment notes themselves, provide substantial evidence for the ALJ's opinion that Conrad's extremely restrictive opinions were not supported by her own records. *See* Tr. 1317-21 (February 2020 treatment note where Plaintiff reported depression and social anxiety rendering him unable to leave his house more than one or two times per month. On psychiatric examination, Conrad noted a dysphoric and anxious mood, a flat and quiet affect, but no impaired thought processes. She prescribed medication.); Tr. 1268-71 (June 2020 treatment note stating Plaintiff "reports feeling like he is doing much better," including being able to go to a car dealership and Walmart, and he "feels he is doing better than expected"); Tr. 1246-48 (July 2020 treatment note where Plaintiff reported high anxiety and not much improvement after medication changes); Tr. 1238-41 (August 2020 treatment note where Plaintiff reported both depression and anxiety were "bad," he did not think his medications were working, and that he had a "near breakdown" when he went to a crowded Walmart. Conrad changed his medication regime.); Tr. 1187-89 (October 2020 treatment note where Plaintiff reported "up and down" anxiety, decreased concentrating abilities, and depression); Tr. 1165-67 (December 2020 treatment note where Plaintiff reported "doing well" and feeling "stable," but having anxiety if he needed to leave the home. His anxiety and depression were noted to be "manageable at this time.");

9

Tr. 1157-60 (January 2021 treatment note where Plaintiff reported doing "alright" and having some panic attacks, but getting over them more quickly and that it was "not anything serious like it used to be." Conrad made no changes, as Plaintiff was "essentially stable" and had "some anxiety, but seems to be managing it well." ); Tr. 1142-44 (February 2021 treatment note where Plaintiff reported a medication increase had been helpful, he had been out of the house three to four times the prior week, which "is stressful for him"); Tr. 1124-26 (March 2021 treatment note where Plaintiff reported "doing well" and reporting stability. His anxiety and depression were noted to be "controlled," and his psychiatric examination was normal.); Tr. 1108-10 (July 2021 treatment note where Plaintiff reported an "up and down" mood and that "[i]f he stays home, he feels fine." Conrad made no medication changes.); Tr. 1099-1103 (August 2021 treatment note where Plaintiff reported "doing very well lately" and Conrad observed Plaintiff's anxiety and depression were "controlled"); Tr. 1087-89 (October 2021 treatment note where Plaintiff described poor energy, anxiety that "comes and goes," a "disrupted mood," and that he had "not been working out and active like he was." Plaintiff's psychiatric examination showed normal mood, affect, attitude, thought process and content, and appropriate behavior. Conrad suggested trying vitamins for mood and energy before considering medication changes.); Tr. 1071-76 (March 2022 treatment note where Plaintiff described increased anxiety and panic attacks, and was noted on examination to have a normal mood and affect, as well as appropriate behavior); Tr. 1712-13 (March 2022 treatment note where Plaintiff reported "doing ok" and felt an increased Zoloft dosage had been helpful); Tr. 1702-07 (October 2022 treatment note where Plaintiff stated he was having increased anxiety and thought he might need an increase in medication. Conrad opined that his anxiety was situational and discussed non-pharmacological interventions. On psychiatric examination, Conrad observed Plaintiff's mood, attitude, and affect

10

were normal.); Tr. 1691-97 (January 2023 treatment note where Plaintiff reported increased anxiety and depression. On psychiatric exam, Conrad found Plaintiff's mood, attitude, affect, and behavior were normal. Conrad continued medications.); Tr. 1671-76 (September 2023 treatment note where Plaintiff reported increased anxiety and depression as well as suicidal thoughts and self-harm. Plaintiff requested a medication change and Conrad changed his medications.); Tr. 1649-54 (November 2023 treatment note where Plaintiff reported "he feels like he is back to himself" after a medication change. On examination Conrad noted Plaintiff's grooming was abnormal due to not bathing for four months. Conrad prescribed a B vitamin.); Tr. 1638-43 (March 2024 treatment note where Plaintiff reported his anxiety and depression were "really bad lately." On examination Conrad again observed Plaintiff's grooming was abnormal due to lack of bathing. Conrad encouraged nutrition and physical activity and continued Plaintiff's medications.); Tr. 1626-32 (April 2024 treatment note where Plaintiff reported increased depression and that he did not think his medication was working. Plaintiff also reported anxiety, feelings of hopelessness/worthlessness, low energy, and social withdrawal. On psychological examination, Conrad observed Plaintiff had a tearful and angry affect and adjusted his medications.).

The ALJ's determination that these treatment records did not support the extreme degree of limitation in multiple functional areas opined by Conrad is supported by substantial evidence. *See Fox v. Comm'r of Soc. Sec.*, 827 F. App'x 531, 534 (6th Cir. 2020) ("The substantial evidence standard, while requiring 'more than a mere scintilla' of evidence, is not a high bar; substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). This is not to say that Plaintiff has no restriction or that substantial evidence does not also support the opposite conclusion. And Plaintiff can argue that substantial evidence also *does not* support the ALJ's

11

supportability analysis. But this court must defer to the ALJ's decision if there is substantial evidence to support it, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 356 (6th Cir. 2020) ("This case is like many others under the deferential substantial-evidence standard. While the evidence could support the opposite result, it supports the result that the administrative law judge reached. We thus have no legal basis to overturn it.") (citation modified).

Finally, the Court does not find it inherently contradictory or improper, as Plaintiff argues, for the ALJ to conclude Conrad's opinions are not supported by her treatment records while at the same time noting and relying upon improvement from her June 2020 to September 2024 opinions. Read in the context of the opinion as a whole, the ALJ found the *degree* of Conrad's opined limitations unsupported. The ALJ stated she found Conrad's opinions "less persuasive"; she did not reject them outright. Indeed, the ALJ partially incorporated Conrad's statement that Plaintiff would "do better" if he were able to "find a job with no contact with others" into the RFC. (Tr. 1363) (ALJ evaluation of Conrad's opinions); (Tr. 1025) (Conrad Opinion); (Tr. 1357) (RFC limiting Plaintiff to only occasional and superficial interaction with supervisors, interactions, and the general public). And the ALJ included other significant mental limitations in the RFC: simple and routine tasks, and few changes in the work environment that must occur infrequently and be easily explained. (Tr. 1357).

Given the above, the Court finds substantial evidence supports the ALJ's determination that the degree of limitation in Conrad's opinions was not supported by her own treatment records.

12

Consistency

Plaintiff's argument is largely directed at the supportability factor rather than the consistency factor. *See* Docs. 6, 9, 11. However, the Court also finds substantial evidence supports the ALJ's determination that Conrad's opinions were not consistent with the record as a whole.

Again, elsewhere in her opinion, the ALJ undertook a comprehensive review of the medical record. *See* Tr. 1359-62. Read as a whole, this analysis provides substantial evidence support for the ALJ's decision that Conrad's extremely limiting opinions were less persuasive. For example, the ALJ highlighted that Plaintiff's treatment was largely conservative and that he had not sought recommended additional mental health treatment as well as evidence from providers other than Conrad where Plaintiff reported doing well or had normal mental status findings. *See id.* Further, the ALJ summarized and found "overall persuasive" the opinions of state agency psychological consultants who found Plaintiff's limitations, though significant, were not work-preclusive. (Tr. 1363). This analysis of the record supports the ALJ's determination that the degree of Conrad's opined restrictions were not "consistent" with the record as a whole. *See Crum*, 660 F. App'x at 455.

As with Plaintiff's supportability argument, Plaintiff may be able to point to substantial evidence that the record was in fact *consistent* with Conrad's opinions. But so long as the ALJ's conclusion – that Conrad's opinions were inconsistent with the record – is supported by substantial evidence, the Court must affirm. *See Blakley*, 581 F.3d at 406; *Stewart*, 811 F. App'x at 356. The Court finds the ALJ's determination regarding the consistency factor is supported by substantial evidence and the ALJ adequately explained that determination.

**CONCLUSION**

For the foregoing reasons, Plaintiff's objections are OVERRULED, Judge Greenberg's recommended disposition (Doc. 10) is ADOPTED as the Order of this Court, as further supplemented and explained herein, and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: February 25, 2026